UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
AUG 09 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 06-57-GWU

CYNTHIA L. ROBERTS, PLAINTIFF

VS.     **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,     DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Roberts

Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

Roberts

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Roberts

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

Roberts

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

Roberts

may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that Roberts suffered from degenerative disc disease of the lumbar spine (with a history of a laminectomy and fusion at L5-S1), arrhythmias and depression. (Tr. 15). These conditions limited the plaintiff to a restricted range of medium level work and prevent her from performing her past relevant work as a cashier. (Tr. 17). However, it was determined that Roberts could perform significant numbers of alternative jobs at the medium level,[1] based on the testimony of a vocational expert (VE). (Tr. 18, 218, 220).

The hypothetical factors cited to the VE included: (1) an ability to perform no more than medium level exertion, (2) the ability to climb ladders and scaffolding occasionally, and (3) sit-stand option "every hour" (Tr. 217-218). The following mental restrictions were added: (1) a severe limitation in the ability to deal with the

---

[1] The VE named three light level job categories (Tr. 220), but the ALJ did not cite these in his opinion.

public and (2) "limited but satisfactory" abilities to use judgment, deal with supervisors, deal with work stress, function independently, relate predictably in a social setting, and demonstrate reliability (Tr. 218-219). Medium level jobs such as production laborer, hand packer and production machine operator would be compatible with those restrictions. (Tr. 218). Light level jobs also compatible were production inspector, production laborer and hand packer. (Tr. 220). The VE also indicated that the light level jobs identified would also be possible for someone capable of only occasional fine manipulation and no more than occasional reaching and handling. (Id.).

The hypothetical physical restrictions were more extensive than those mentioned by Medical Reviewer John Rawlings (Tr. 128-135), whose opinion the ALJ found to be supported by the evidence as a whole (Tr. 16). The plaintiff contends that the ALJ impermissibly rejected the opinion of Richard Parks in doing so, however.

The Commissioner attacks the opinion of Dr. Parks, noting that "he did not see her from June 5, 2003 until February 18, 2005 (Tr. 16, 140,157)," apparently attempting to imply to a degree that Parks was not a treating source. As the totality of Parks' progress notes make clear, however, he had treated the plaintiff on a periodic basis since <u>1978</u>, when Roberts was 19 years old (Tr. 157). Thus, the physician had seen the plaintiff over 40 times prior to the onset date, including a time

frame in 1998 when she underwent a total laminectomy (Tr. 143), and at least twice[2] after the alleged onset date, including a time when a repeat lumbar spine MRI was done (Tr. 139). Thus, this aspect of the Commissioner's attempt to discredit Parks is not so persuasive as to allow a complete discount of his findings.

On the other hand, the part of Parks' assessment relating to the plaintiff's ability to lift, carry, stand, walk, sit and engage in postural activities appears to have been based directly on some opinion issued in 1999 by the plaintiff's neurosurgeon (Tr. 160-161),[3] which is neither independently confirmed in the record and was evidently issued prior to the time the plaintiff worked for years as either a cashier or a deli worker (Tr. 77, 203). Parks also did not identify specific reaching, handling and feeling restrictions (Tr. 162), so that the supplemental hypothetical question for which light level jobs were identified would appear to have taken the notations into account. Thus, by and large, Parks' physical restriction assessment did not create an undue obstacle for the Commissioner.

Nonetheless, Parks did suggest that the plaintiff had experienced "a lot of stress" in the past (Tr. 107, 108) and increased depression as well as problems from concentration (Tr. 163), and the only mental health examiners report noted a number

---

[2] Both the plaintiff and her doctor refer to the fact the plaintiff had no health insurance to seek regular medical treatment (Tr. 140, 205).

[3] On the form itself, Parks specifically referred to the old fusion surgery and Neurosurgeon Brooks' opinion and cited no independent findings of his own (Tr. 160).

9

Roberts

of extensive mental restrictions (Tr. 183-184) not included in the original hypothetical. The ALJ should, in the face of this evidence, have procured the services of a medical reviewer to examine and comment upon the evidence rather than rejecting or "reinterpreting" the restrictions based on his own lay opinion.

The case will be remanded for further analysis of the plaintiff's mental condition.

This the  9  day of August, 2006.

G. WIX UNTHANK
SENIOR JUDGE